UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPECIAL DISTRICT RISK MANAGEMENT AUTHORITY, a joint powers authority,<br><br>Plaintiff,<br><br>v.<br><br>MUNICH REINSURANCE AMERICA, INC., a corporation; GENERAL REINSURANCE CORPORATION, a corporation; and DOES 1–100, inclusive,<br><br>Defendants. | No. 2:20-cv-02404-TLN-CKD<br><br>**ORDER** |

This matter is before the Court on Defendant Munich Reinsurance America, Inc.'s ("Munich") Motion for Judgment on the Pleadings (ECF No. 8), which Defendant General Reinsurance Corporation ("General") requested to join on April 21, 2021 (ECF No. 14.)[1] Plaintiff Special District Risk Management Authority ("Plaintiff") filed an opposition, and Munich replied. (ECF Nos. 10, 12.) After carefully considering the parties' briefings and for the reasons set forth below, the Court hereby GRANTS Munich's motion. (ECF No. 8.)

///

---

[1] For reasons discussed herein, General's joinder request is GRANTED and the Court considers the motion as pertaining to both Defendants.

### I.     FACTUAL AND PROCEDURAL BACKGROUND

In the early 2000s, Mission Street Development ("MSD") proposed to construct the Millennium Tower, a high-rise building in San Francisco, California. (ECF No. 1-1 at 7.) Concurrently, Transbay Joint Powers Authority ("TJPA") sought to replace the outdated Transbay Terminal, located adjacent to the proposed MT site. (*Id.* at 7.) The Millennium Tower was completed in 2009, and TJPA began construction on the new Transbay Terminal shortly after. (*Id.*)

Plaintiff, a joint powers authority, provided liability coverage to over 400 public entities, including TJPA from 2006 to 2018 and MSD from 2010 to 2016. (*Id.* at 7–8.) During the same period, Plaintiff was reinsured by Munich and General (collectively, "Defendants"). (*Id.* at 8–11.)

In 2016, the Millennium Tower had sunk sixteen inches — approximately three times greater than expected — and was leaning fifteen inches at the top. (*Id.* at 7.) As a result, TJPA and MSD became defendants in several liability actions for their alleged contribution or involvement in the Millennium Tower's defects.[2] (*Id.* at 11–12.) TJPA and MSD tendered those cases to Plaintiff under their applicable liability coverage policies. (*Id.* at 11–12.)

Prior to settlement negotiations, Plaintiff requested Defendants commit to whether they would indemnify Plaintiff for the settlement amount pursuant to the terms of their individual reinsurance agreements. (*Id.* at 12–13.) Defendants declined to commit to indemnification at that time but assured Plaintiff that they would evaluate any reimbursement claim in good faith after a definitive loss had been incurred. (*Id.*) Defendants also reminded Plaintiff of its independent duty to defend and settle its members' claims — without regard to reinsurance conditions. (*Id.*) Plaintiff, "pursuant to the direction of both Defendants," then settled the actions against TJPA and MSD for ten million dollars, collectively, and incurred expenses of one million dollars. (*Id.* at 13.)

After Plaintiff settled the actions against its insureds, it sought reimbursement from

---

[2]     TJPA was allegedly aware of but did not disclose the Millennium Tower's design defects, and TJPA's construction on the Transbay Terminal allegedly "caused or contributed to the unexpected settlement and sinking of the Millennium Tower." (ECF No. 1-1 at 7.)

2

Defendants pursuant to the terms of the applicable reinsurance policies. (*Id.* at 13.) Defendants each denied Plaintiff's claim. (*Id.* at 13.)

As a result, Plaintiff initiated this action in the Sacramento County Superior Court. (ECF No. 1-1 at 5-18.) On December 2, 2020, Defendants removed the action to this Court. (ECF No. 1.) On February 11, 2021, Munich filed the instant motion for judgment on the pleadings. (ECF No. 8.) Plaintiff filed an opposition on March 4, 2021, and Munich replied on March 11, 2021. (ECF Nos. 10, 12.) On April 21, 2021, General requested to join Munich's motion. (ECF No. 14.)

## II.   STANDARD OF LAW

Federal Rule of Civil Procedure ("Rule") 12(c) provides that, "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The issue presented by a Rule 12(c) motion is substantially the same as that posed in a Rule 12(b)(6) motion — whether the factual allegations of the complaint, together with all reasonable inferences, state a plausible claim for relief. *See Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054–55 (9th Cir. 2011). Thus, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

In analyzing a 12(c) motion, the district court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). However, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose* (*Chunie*), 788 F.2d 638, 643 n.2 (9th Cir. 1986). "A judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Ventress v. Japan Airlines*, 603 F.3d 676, 681 (9th Cir. 2010) (citations omitted).

If the Court "goes beyond the pleadings to resolve an issue," a judgment on the pleadings is not appropriate and "such a proceeding must properly be treated as a motion for summary

1  judgment." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir.
2  1989); Fed. R. Civ. P. 12(d).  A district court may, however, "consider certain materials —
3  documents attached to the complaint, documents incorporated by reference in the complaint, or
4  matters of judicial notice — without converting the motion to dismiss [or motion for judgment on
5  the pleadings] into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908
6  (9th Cir. 2003).
7       Courts have discretion in appropriate cases to grant a Rule 12(c) motion with leave to
8  amend, or to simply grant dismissal of the action instead of entry of judgment.  *See Lonberg v.*
9  *City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004); *Carmen v. S.F. Unified Sch. Dist.*,
10 982 F. Supp. 1396, 1401 (N.D. Cal. 1997).

11     **III.**    **ANALYSIS**

12      Munich seeks judgment on the pleadings as to Plaintiff's claim for tortious breach of the
13 implied covenant of good faith, thus precluding Plaintiff's prayer for punitive damages and
14 attorney fees which derive from that claim.  (ECF No. 8.)  Particularly, Munich argues Plaintiff,
15 as a reinsured, cannot bring a tortious breach of the implied covenant of good faith against a
16 reinsurer as a matter of law.  (*Id.* at 6.)  In opposition, Plaintiff argues its contractual relationship
17 with Munich is analytically analogous to that of an insured — rather than a reinsured — to justify
18 a tortious breach of the implied covenant of good faith and the accompanying remedies.  (ECF
19 No. 10 at 9.)  Plaintiff additionally argues Munich's motion is procedurally flawed and that
20 attorney fees and punitive damages are recoverable based on the other claims asserted in the
21 Complaint, even in the absence of the tortious bad faith claim.  (ECF No. 10 at 11–13, 14–17.)
22      General requests to join Munich's motion to promote judicial efficiency.  (ECF No. 14.)
23 Plaintiff's claims against General are the same as those against Munich, and Plaintiff's
24 relationship with General and Munich were identical, aside from the years the reinsurance
25 policies were effective.  (ECF No. 1-1.)  As such, for purposes of the this motion only, the Court
26 GRANTS General's request to join Munich's motion for judgement on the pleadings to promote
27 judicial economy and conserve judicial resources.  *Hughey v. Drummond*, 2:14-cv-00037-TLN-
28 AC, 2014 WL 5797365, at *1 n.1 (E.D. Cal. Nov. 6, 2014).  Accordingly, the Court will consider

1   the instant motion as though it were brought by both Defendants and address them together
2   herein.
3         As a preliminary matter, the Court will first address whether Munich's motion for
4   judgment on the pleadings is procedurally proper under Rule 12(c).  The Court will then analyze
5   the substance of Defendants' motion for judgment on the pleadings as to Plaintiff's claim for
6   tortious breach of the implied covenant of good faith — namely, whether Plaintiff can assert a
7   tortious bad faith claim against Defendants.  Lastly, the Court will determine whether punitive
8   damages and attorney fees are still recoverable independent of that tort claim.

9         A.      <u>Propriety of Motion Under Rule 12(c)</u>

10        Plaintiff argues that resolution of its' first cause of action for breach of contract and
11  breach of both the duty of utmost good faith and the covenant of good faith by a Rule 12(c)
12  motions is improper as judgment is not appropriate when addressing only *part* of a claim.  (ECF
13  No. 10 at 11.)  Plaintiff's first *cause of action* asserts multiple claims against Defendants for
14  "BREACH OF CONTRACT *AND* BREACH OF *BOTH* THE DUTY OF UTMOST GOOD
15  FAITH *AND* THE COVENANT OF GOOD FAITH."  (ECF No. 1-1 at 14 (emphasis added); *see*
16  *also* ECF No. 10 at 12–13 ("[T]he first [and second] cause[s] of action also seek[] relief for
17  breach of contract . . . [and] also seek[] relief for breach of [Defendants'] duty of utmost good
18  faith . . . .").)  In addition to other remedies, Plaintiff seeks punitive damages and attorney fees.
19  (ECF No. 1-1 at 17–18.)
20        Defendants seek judgment as to the claim for a breach of the implied covenant of good
21  faith and fair dealing, and as follows, argues that Plaintiff cannot recover certain damages.  (ECF
22  No. 8 at 13–14.)  Defendants argue that a claim is not tied to the formatting within a complaint,
23  and that Plaintiff's tortious breach of the implied covenant of good faith is a single claim
24  regardless of how Plaintiff listed it within its' complaint.  (ECF No. 12 at 6–7.)
25        While Plaintiff correctly notes courts in the Ninth Circuit have denied motions for
26  judgment on the pleadings when sought on only part of a cause of action, *e.g.*, *Erhart v. BofI*
27  *Holding, Inc.*, 387 F. Supp. 3d 1046, 1062–63 (S.D. Cal. 2019) (collecting cases), Defendants'
28  instant motion seeks judgment on the tortious breach of the implied covenant of good faith in its

5

entirety — not as to only part of that claim. (ECF No. 8.) Rather than seeking judgment on punitive damages and attorney fees, Defendants argue those remedies necessarily fail as a result of a judgment on the tortious breach claim. (ECF No. 8 at 2.) In other words, Defendants do not seek judgment on the pleadings as to punitive damages and attorney fees but instead argue that such remedies cannot exist in absence of the claim for tortious breach of the implied covenant of good faith. (*Id.*) The Court will address whether the damages sought may exist in the absence of a tortious breach of the implied covenant of good faith. However, as to the propriety of Defendants' 12(c) motion, the Court finds such is proper because it seeks judgment on the tortious breach of the implied covenant of good faith claim in its entirety. *Erhart v. BofI Holding, Inc.*, 387 F. Supp. 3d at 1062–63.

### B. Tortious Breach of the Implied Covenant of Good Faith

Defendants move for judgment on the pleadings as to Plaintiff's tortious bad faith claim on the basis that such claim cannot be made against a reinsurer. (ECF No. 8 at 13.) In opposition, Plaintiff argues its relationship with Defendants is more akin to that of an insured — rather than a reinsured — thus permitting a claim for tortious breach of the implied covenant of good faith under California law. (ECF No. 10 at 8–9, 17–23.) Plaintiff's argument is unavailing because it has indeed alleged a reinsurer relationship[3] and the parties' respective duties resemble those typically possessed by a reinsured and reinsurer.[4][5] Moreover, Plaintiff fails to adequatley address the ample authority Defendants cite finding that parties similarly situated to Plaintiff cannot bring such a claim against a reinsurer under California law.

The California Supreme Court has not decided whether tortious breach of the implied

---

[3]    (*E.g.*, ECF No. 1-1 at 8 ("[B]oth Munich[] and Gen[eral], pursuant to certain reinsurance policies, separately agreed to reinsure [Plaintiff] for losses paid by [Plaintiff] pursuant to its Liability Coverage Agreement to or on behalf of its members (hereinafter the 'Reinsurance Policies').").)

[4]    Plaintiff had a duty to investigate, defend, and settle its members' claims, while Defendants only had a duty to indemnify Plaintiff for losses incurred on behalf of its members. (*See generally* ECF No. 1-1.)

[5]    Joint powers self-insured retention pools — like Plaintiff — have been considered a "reinsured." *California Jt. Powers Ins. Auth. v. Munich Reinsurance Am., Inc. ("CJPIA")*, CV 08-956 DSF RZX, 2008 WL 1885754 (C.D. Cal. Apr. 21, 2008).

covenant of good faith may be asserted against reinsurers. Thus, courts must predict what the California Supreme Court would do under those circumstances. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 663 n.10 (9th Cir. 1998). Moreover, the Court is unaware of any decision by the California Court of Appeal authorizing a claim for tortious breach of the implied covenant of good faith and fair dealing against a reinsurer.

In *Cates Constr., Inc. v. Talbot Partners*, 980 P.2d 407 (Cal. 1999), the California Supreme Court outlined the factors it relied on to extend tort recovery in the insurance context but not in others: "tort recovery is considered appropriate in the insurance policy setting because such contracts are characterized by elements of adhesion and unequal bargaining power, public interest and fiduciary responsibility." *Id.* at 421–22 (citing *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 675, 765 P.2d 373, 383 (1988)). The California Supreme Court cautioned other courts from expanding this exception and has routinely denied tort recovery absent identical policy concerns. *See*, *e.g.*, *Cates*, 980 P.2d 407 (denying tortious bad faith in the context of performance bonds); *Foley*, 765 P.2d 373 (denying tortious bad faith in the context of employment contracts); *see also Erlich v. Menezes*, 981 P.2d 978 (1999) (finding noncontractual damages unavailable for breach of a construction contract).

Consequently, several courts have determined that "California's high court would only extend liability to reinsurance contracts if they were at risk of the same violations of social policy that led the court to extend tort liability to insurance contracts." *California Capital Ins. Co. v. Maiden Reinsurance N.A., Inc.* ("*CCIC*"), 472 F. Supp. 3d 754, 759 (C.D. Cal. 2020).

> Reinsurance is "a special form of insurance obtained by insurance companies to help spread the burden of indemnification. A reinsurance company typically contracts with an insurance company to cover a specified portion of the insurance company's obligation to indemnify a policyholder . . . This excess insurance . . . enables the insurance companies to write more policies than their reserves would otherwise sustain since [it] guarantees the ability to pay a part of all claims. The reinsurance contract is not with the insured/policyholder. When a valid claim is made, the insurance company pays the first level insured, and the reinsurance company pays the insurance company. The reinsurance company's obligation is to the insurance company, and the insurance company vis-a-vis the

reinsurer is thus the insured, or more appropriately, the 'reinsured.'"

*Catholic Mut. Relief Socy. v. Super. Ct.*, 165 P.3d 154, 160 (Cal. 2007) (citations omitted).

While the question of whether a reinsurer may be sued for tort liability by its reinsured has not been addressed under California law, a number of federal district courts have uniformly held that such claims cannot proceed. *See, e.g.*, *CJPIA*, CV 08-956 DSF RZX, 2008 WL 1885754 (finding a "joint powers self-insured retention pool" a reinsured and thus precluded from asserting a tortious breach of good faith against its reinsurer under California law); (finding "the policy reasons the California Supreme Court considered when extending tort remedies to a breach of the implied covenant in insurance cases are absent from the reinsurer-reinsured relationship."); *Stonewall Ins. Co. v. Argonaut Ins. Co.*, 75 F. Supp. 2d 893, 909 (N.D. Ill. 1999) (applying California law, "[b]ecause [] elements [of adhesion, unequal bargaining power, public interest, and fiduciary responsibility] are either entirely lacking or are present to a much lesser degree in a reinsurance policy, a reinsured cannot recover tort damages for a reinsurer's breach of the covenant of good faith.").

Specifically, those courts uniformly found elements of adhesion and unequal bargaining power absent in reinsurance contracts because they are negotiated at "arms-length." *E.g.*, *Stonewall*, 75 F. Supp. 2d at 910 (applying California law); *CJPIA*, 2008 WL 1885754, at *3. For the public interest component, the court in *Cates* considered two factors: (1) whether the insured seeks a commercial advantage or protection against calamity; and (2) whether the insured faces a unique economic dilemma in the event the insurer breaches. *Cates*, 980 P.2d at 422–23. The first factor disfavors extending tort recovery for reinsureds because a reinsured obtains reinsurance as a commercial advantage by spreading the burden of indemnifying its insureds, rather than to protect itself against "disability, death, fire, or flood . . . ." *Cates*, 980 P.2d at 422; *see also CCIC*, 472 F. Supp. 3d at 760. And although "[r]einsureds do face the [same] economic dilemma recognized by [*Cates*]," such public interest factor alone is insufficient to extend tort relief considering the California Supreme Court's significant disinclination to do so. *CCIC*, 472 F. Supp. 3d at 760; *CJPIA*, 2008 WL 1885754, at *4. Finally, a principal basis for extending tort

8

liability in the context of liability insurance is the insurer's duty to defend and settle third party claims. *Cates*, 980 P.2d at 424 (citing *Crisci v. Security Ins. Co.*, 426 P.2d 173 (Cal. 1967); *Comunale v. Traders & General Ins. Co.*, 328 P.2d 198 (Cal. 1958)). "[R]einsurers have no comparable duties to investigate or defend claims between third parties and the underlying liability insurers or their insureds . . . ." *Catholic Mut. Relief Socy.*, 165 P.3d at 160. Thus, "reinsurers do not have the same fiduciary responsibilities that insurers do to justify imposing tort liability on reinsurers." *CCIC*, 472 F. Supp. 3d 754; *Stonewall*, 75 F. Supp. 2d at 910.

In opposition, Plaintiff seems to heavily rely on the Insurance Code and Government Code in support of its position. (*See generally* ECF No. 10.) However, because the Court in *Cates* considered policy reasons as the driving force for whether to extend tortious liability, *Cates*, 980 P.2d at 420–21, Plaintiff's reliance on the Insurance Code and Government Code are misplaced. In addition, Plaintiff fails to persuasively rebut the foregoing cases rejecting the assertion of a tortious bad faith claim against a reinsurer. For example, Plaintiff's reliance on *Connecticut Gen. Life Ins. Co. v. Johnson*, 67 P.2d 675 (Cal. 1937), rev'd, 303 U.S. 77 (1938) — a 1938 case addressing the constitutionality of levying taxes on the profits of a reinsurance company — is taken out of context. Plaintiff further argues that allegations in the Complaint modify the *Cates* analysis to permit tort recovery against Defendants (*Id.* at 24–26), but the Court finds those allegations conclusory and thus need not be accepted as true. *Chunie*, 788 F.2d at 643 n.2 (finding a court "need not assume the truth of legal conclusions cast in the form of factual allegations.").

In sum, the reasons the California Supreme Court for justifying tort liability for breach of the implied covenant of good faith and fair dealing in the insurance context are absent from the reinsurance relationship between Plaintiff and Defendants here. Considering the California Supreme Court's disinclination to extend this exception further, the Court finds no reason to deviate from the outcome uniformly reached in the cases Defendants cite that reject tort recovery against a reinsurer for breach of the implied covenant of good faith. As such, Plaintiff — as a reinsured — may not recover for tortious breach of the implied covenant of good faith from Defendants. The Court GRANTS Defendants' motion as to Plaintiff's claim for tortious breach

of the implied covenant of good faith and fair dealing.

C. <u>Availability of Punitive Damages and Attorney Fees</u>

Defendants contend Plaintiff cannot recover punitive damages and attorney fees in the absence of the tortious bad faith claim. (ECF No. 8 at 13.) In opposition, Plaintiff argues it may still recover punitive damages and attorney fees because it adequately pleaded constructive fraud and breach of contract. (ECF No. 10 at 13–17.) The Court disagrees with Plaintiff and will discuss both arguments in turn.

First, Plaintiff's Complaint does not identify a claim for "constructive fraud." Aside from failing to plead each element of constructive fraud with the requisite specificity,[6] Plaintiff fails to assert it was in a confidential relationship with Defendants as required. (*See generally* ECF No. 1-1; *see also Peterson Dev. Co. v. Torrey Pines Bank*, 284 Cal. Rptr. 367, 375 (Cal. App. 4th Dist. 1991) (finding the existence of a fiduciary or confidential relationship is essential to a constructive fraud claim) (citing *Mary Pickford Co. v. Bayly Bros.*, 86 P.2d 102 (Cal. 1939)).) "[A] [confidential] relation ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent." *Herbert v. Lankershim*, 71 P.2d 220, 257 (Cal. 1937); *Bacon v. Soule*, 126 P. 384, 385–86 (Cal. App. 1st Dist. 1912).

Here, the allegations reveal the opposite: that Plaintiff and Defendants were sophisticated parties and entered the reinsurance contracts at arms-length. (*See*, *e.g.*, ECF No. 1-1 at 5, 6 ("[Plaintiff's] members consist of over 400 special districts, agencies and other public entities . . . [Plaintiff] provides risk financing as authorized by its Board of Directors pursuant to the Liability Coverage Agreements.").) Parties to reinsurance contracts are not bound by fiduciary duties as a matter of law because the reinsurance contract is entered into at arms-length. *Stonewall*, 75 F. Supp. 2d at 909 (applying California law, "a reinsurance contract is negotiated at 'arms-length'

---

[6] Each element of a claim for constructive fraud must be pled with heightened specificity, like claims for actual fraud. *Schauer v. Mandarin Gems of Cal., Inc.*, 23 Cal. Rptr. 3d 233, 241 (Cal. App. 4th Dist. 2005).

10

just like any other commercial contract."); *see, e.g.*, *Wolf v. Super. Ct.*, 130 Cal. Rptr. 2d 860 (Cal. App. 2d Dist. 2003), as modified on denial of reh'g (Mar. 20, 2003) (declining to extend fiduciary obligations, in the absence of a vulnerability, when agreements are entered into at arms-length).

For the foregoing reasons, the Court cannot discern a valid claim for constructive fraud within the Complaint. Therefore, Plaintiff's prayer for punitive damages and attorney fees cannot be based on a constructive fraud claim because no such claim was sufficiently alleged.

As to Plaintiff's breach of contract claim,[7] "punitive damages may not be awarded for breach of contract 'even where the defendant's conduct in breaching the contract was willful, fraudulent, or malicious.'" *Cates*, 980 P.2d at 428 (quoting *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 460 (Cal. 1994)).

Accordingly, Plaintiff's prayer for punitive damages is STRICKEN because there is no remaining claim for which punitive damages could survive.

### D.     Leave to Amend

Alternatively, Plaintiff seeks leave to amend. (ECF No. 10 at 26; ECF No. 10-1.) As detailed in the supporting declaration of counsel, Plaintiff indicates it would include the following allegations: (1) Plaintiff was required to accept the reinsurance policies on a "take-it-or-leave-it" basis (ECF No. 10-1 at 2); (2) a provision in the reinsurance policies gave Defendants the right to be associated with defending the claim implicating the reinsurance (*Id.*); and (3) Defendants had a duty to notify Plaintiff whether it would commit to indemnification when so asked. (*Id.* at 3.) The proposed allegations merely seek to support Plaintiff's tortious bad faith claim. However, because the Court has already rejected the possibility of a reinsured recovering for tortious bad faith against its reinsurer as a matter of law, an amendment would be futile. Moreover, the Court cannot imagine any allegation that would prove otherwise. Accordingly, the Court DENIES Plaintiff leave to amend as to the tortious bad faith claim.

---

[7] As Defendants do not seek judgment on the breach of contract cause of action, the Court will assume without deciding that Plaintiff has adequately pleaded its breach of contract claim and analyze whether punitive damages and attorney fees are recoverable on that theory.

**IV.   CONCLUSION**

For the foregoing reasons, General's joinder request (ECF No. 14) is hereby GRANTED, and Defendants' Motion for Judgement on the Pleadings (ECF No. 8) is GRANTED as follows:

1. Plaintiff's claims for tortious breach of the implied covenant of good faith, as asserted against Munich in Claim One and against General in Claim Two, are DISMISSED without leave to amend; and

2. Plaintiff's prayers for punitive damages and attorney fees are hereby STRICKEN from the Complaint.

IT IS SO ORDERED.

Dated:  September 27, 2021

Troy L. Nunley
United States District Judge